UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| KARLTON WAYNE McGARY, | No. 14-cv-4686 LB |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS AND SETTING BRIEFING SCHEDULE** |
| v. | |
| G. PALOMERO; et al., | [Re: ECF No. 30] |
| Defendants. | |

# INTRODUCTION

Karlton Wayne McGary filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to his medical needs. The parties have consented to proceed before a magistrate judge. (ECF No. 1 at 4; ECF Nos. 20-23.)[1] The defendants have moved to dismiss the amended complaint. Mr. McGary has not opposed the motion. For the reasons discussed below, the court denies the motion to dismiss and sets a briefing schedule for a motion for summary judgment.

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of the documents.

**STATEMENT**

Mr. McGary alleges the following in his amended complaint about events and omissions that occurred while he was incarcerated at the Correctional Training Facility in Soledad. Mr. McGary has "advanced lower lumbar degen[e]rative disc disease," which causes him acute and occasionally disabling pain. (ECF No. 8 at 2.) Physicians have prescribed "heavy narcotics" to manage his pain, *id.*, and those medications can only be prescribed at facilities designated as correctional medical facilities. Physical therapy also is prescribed for patients at the advanced stages of this condition. As of 2009, the California Department of Corrections ("CDCR") determined that Mr. McGary could be housed only at institutions designated as medical facilities by the CDCR, where a primary care physician would monitor his medications and schedule physical therapy.

On April 11, 2014, registered nurse Lina Manglicmot was deliberately indifferent when she signed off on a health care transfer form, knowing of his medical needs. As a result of her actions, Mr. McGary was denied pain management medications that had been prescribed for him.

Dr. G. B. Palomero was deliberately indifferent to Mr. McGary's medical needs "on numerous occasions." *Id.* at 5. Dr. Palomero failed to update Mr. McGary's CDC-1845 disability placement program verification form; this failure allowed Mr. McGary to be transferred to an out-of-state facility that could not offer the level of health care he required. Dr. Palomero refused to discuss long-term pain management medications already approved for Mr. McGary; this refusal caused Mr. McGary to be without pain medications for extended periods of time. Dr. Palomero failed to "rectify the plaintiff's medical disability status from a facility not designated as a CDCR medical facility" – apparently meaning that Dr. Palomero failed to cause him to be returned from the out-of-state facility to a CDCR medical facility – thereby causing him to experience undue pain and suffering, *Id.* at 6.

On September 25, 2013 or September 25, 2014, captain P. Marziello and CCI J. Summers were deliberately indifferent by referring Mr. McGary for a non-adverse transfer to a non-medical out-of-state facility without checking with health care staff to see if the transfer was appropriate. As a result, Mr. McGary was denied pain medications that had been prescribed for him and experienced undue pain and suffering.

The court liberally construed the amended complaint and found that it stated cognizable § 1983 claims against nurse Manglicmot, Dr. Palomero, captain P. Marziello, and CCI J. Summers for deliberate indifference to Mr. McGary's serious medical needs based on their actions or omissions that caused Mr. McGary to be sent to an out-of-state facility at which his serious medical needs could not be addressed adequately. (ECF No. 9-2 at 3.)

**ANALYSIS**

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against the defendant and the grounds for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

## II. THE AMENDED COMPLAINT DOES NOT FAIL TO STATE A CLAIM

The defendants argue that the amended complaint fails to state a claim for deliberate indifference to medical needs because the attachments to the amended complaint establish that (1) the decision to transfer Mr. McGary to an out-of-state facility was made after careful consideration of his eligibility, including health factors; (2) Mr. McGary did not request the medicine which appears to be the basis for his claimed ineligibility for transfer until after the transfer was approved; and (3) the out-of-state facility approved and provided the requested medications. (ECF No. 30 at 2.) The defendants' motion relies completely on the attachments to the amended complaint. The documents attached to the amended complaint include some inmate appeals and responses, a very limited selection of medical records from the CDCR and the Oklahoma prison to which Mr. McGary was sent, and a classification memorandum. The defendants essentially argue that whatever was stated by prison officials in their responses to Mr. McGary's inmate appeals, their classification records, and the medical records should be treated as fact, and, when so considered, those statements show that Mr. McGary's claims have no merit.

Although the court can consider attachments to a pleading in deciding a Rule 12(b)(6) motion, it should not do so with blind acceptance, particularly with a *pro se* plaintiff. The limits on using exhibits were explained in another case where defendants tried to use Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," to impute to a plaintiff an entire report written by a defendant simply because the plaintiff's complaint referred to the report.

> [T]he defendants assume that Rule 10(c) requires a plaintiff to adopt as true the full contents of any document attached to a complaint or adopted by reference. This is not a proper reading of the rule. Courts have found that "[i]f the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate," *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974) (prospectus attached to complaint alleging bond purchase based on material misrepresentations). An appended document will be read to evidence what it incontestably shows once one assumes that it is what the complaint says it is (or, in the absence of a descriptive allegation, that it is what it appears to be). For example, a written contract appended to the complaint will defeat invocation of the Statute of Frauds, and a document that discloses what the complaint alleges it concealed will defeat the allegation of concealment. By the same token, however, a libel plaintiff may attach the writing alleged in the complaint to be libelous without risk that the court will deem true all libels in it. Similarly, a receipt for goods, alleged in the pleading to have been forged, may or may not evidence forgery on its face, but it does not concede delivery of goods for pleading purposes.

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995). "Rather than accepting every

word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (declining to apply blanket rule that document attached is adopted *in toto* "in the case of letters written by the opposition for what could be self-serving purposes"); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (attachment of an officer's statement to a complaint may be treated as an allegation that the officer made the statements, but the court does not accept as true that the "statement is accurate or true; this is a question of credibility and weight of the evidence that is not before a court considering a motion to dismiss").

The defendants cite *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001), for the proposition that "[w]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." (ECF No. 30 at 3.) In *Sprewell*, a professional basketball player challenged the punishment imposed by his former team and the NBA for attacking the team's head coach. He argued, among other things, that the punishment amounted to racial discrimination. Before filing his federal court action, the plaintiff invoked the arbitration provisions of his collective bargaining agreement. The plaintiff attached to his complaint a copy of the arbitrator's award that largely upheld the punishments imposed by the team and the NBA. *Id*. at 985. The district court dismissed the racial discrimination claims, relying on the fact that the arbitration award attached to the complaint "contained extensive factual allegations that fatally undermined Sprewell's section 1981 claim." *Id*. at 988. This was proper, explained the Ninth Circuit. *Id.* at 988-89. The arbitrator had found that the punishment was justified by the "singular misconduct" of Sprewell as well as the fact that attacking a head coach struck at the core of the organized sport. *Id*. at 989. "The uncontested facts set forth in the arbitration award effectively and persuasively rebut the conclusory allegations" that the punishments imposed by the team and the NBA were for racist reasons. *Sprewell*, 275 F.3d at 1188 (order amending original opinion).

*Sprewell* is distinguishable from Mr. McGary's case on several grounds. First, the attachment to the complaint in *Sprewell* was an arbitration award issued after lengthy contested proceedings. The

arbitrator "held nine days of hearings, received testimony from twenty-one witnesses, accepted over fifty exhibits, and was presented with over 300 pages of pre and post-hearing briefs." *Id* at 985. Here, the attachments to the amended complaint are run-of-the-mill prison documents showing no such extensive consideration of any issue. The prison documents (classification committee memoranda, inmate appeal responses, and brief medical records) simply do not reflect fact-finding similar to that in an arbitration decision in an arbitration covered by a collective bargaining agreement. *See Sprewell*, 266 F.3d at 986 ("Judicial scrutiny of an arbitrator's decision in a labor dispute 'is extremely limited.'") Second, the *Sprewell* complaint was drafted by sophisticated counsel, who would have known the significance of attaching a document to a complaint, whereas the amended complaint here was drafted by a *pro se* plaintiff, with no apparent awareness of the significance of attaching a document to a pleading. Third, the document in *Sprewell* was a neutral decision-maker's finding and not documents generated by the defendants to justify their own actions. By contrast, most of the documents relied upon by the defendants in the present motion were written by the defendants. Fourth, the allegations in support of the claim of racial discrimination in *Sprewell* were "conclusory," *Sprewell*, 266 F.3d at 988, whereas Mr. McGary's allegations of deliberate indifference to serious medical needs are not urged to be conclusory.

The defendants suggest that Mr. McGary's attachment of inmate appeals, classification memoranda and excerpts of his medical records is tantamount to him adopting every statement therein. Nothing in the amended complaint manifests any intent by Mr. McGary to adopt prison officials' statements as reflective of his position. And the documents are not a necessary part of Mr. McGary's claim: he could sue with or without them. The defendants' statements are no more attributable to the plaintiff than a plaintiff's statements in the medical records or administrative appeals would be attributable to a doctor or other prison official who submits them as exhibits. The rule that allows the court to look beyond the pleading's text does not require the court to attribute to a plaintiff everything in a document written by a third party or a defendant. But that is what the defendants appear to be trying to do.

One example of the problem of attributing to the plaintiff the statement of others can be found in

the defendants' argument with regard to the September 25, 2013 classification committee decision to involuntarily transfer Mr. McGary to an out-of-state facility. The defendants urge that the classification committee members were not deliberately indifferent because they reviewed Mr. McGary's "'full case factors.'" (ECF No. 30 at 4-5.) The defendants rely on a classification memorandum they signed that was attached to the amended complaint for the proposition that Mr. McGary's "'full case factors' were reviewed and considered, including his medical conditions." (ECF No. 30 at 4-5 (citing ECF No. 8 at 19).) The text of Mr. McGary's amended complaint plainly alleges to the contrary, i.e., the gist of his allegations is that the committee members did not fully consider his circumstances before making their decision. (ECF No. 8 at 7-12.)

The defendants' argument about the September 25, 2013 also highlights the problem of distorting effect of selective use of exhibits attached to a pleading. The defendants argue that a second reason the September 25, 2013 classification committee members were not deliberately indifferent was because Mr. McGary "had not been prescribed the pain medicine that appears to form the basis for his complaint at the time of [the] committee hearing to determine Plaintiff's eligibility for transfer." (ECF No. 30 at 4-5.) The defendants rely on Mr. McGary's inmate appeal about pain medication on February 4, 2014 to suggest that he had no prescription at the time the committee acted four months earlier, on September 25, 2013. (ECF No. 30 at 5 (citing ECF No. 8 at 14-18).) But the defendants fail to mention that the February 4, 2014 inmate appeal suggested a longstanding prescription problem. Mr. McGary wrote in his February 4, 2014 inmate appeal that he had been without his pain medication (i.e., Tylenol III) since November 13, 2013, that "Dr. Palomero states that he refuses to re-prescribe Tylenol III to me," and that he had already had "two other appointments to address this issue for pain." (ECF No. 8 at 15.) The defendants' suggestion that, because the inmate appeal was filed after the committee acted, the pain medication had not been prescribed at the time the committee acted, is quite likely incorrect. And it contradicts the affirmative allegations of the *pro se* amended complaint, including the allegations that (a) since 2009, Mr. McGary had "a continuous regiment of narcotics for pain management," (ECF No. 8 at 3); (b) Dr. Palomero's "blatant refusal to discuss long term pain management medications alread[y] approved by California Health Care Services, led to extended absences of pain medication causing

undue pain and suffering," (*id.* at 6); and (c) if committee member Ms. Summers had made a phone call to health care staff, she could have been made aware of "the already prescribed pain management medications for the seriousness of his condition," (*id.* at 10). Moreover, the defendants fail to note that another exhibit referred to Mr. McGary's documented long term back problems. (ECF No. 8-2 at 5 (California Correctional Health Care Services September 18, 2014 inmate appeal response stating that Mr. McGary's electronic medical records "indicate[ you injured you back in 1994 in a football game. In 2007, a MRI showed L4-L5 bilateral stenosis and L5-S1 foraminal stenosis. Over the years you have had progressive pain and weakness in your legs.")) The court will not uncritically accept statements in exhibits to construct a factual scenario at odds with the actual allegations of Mr. McGary's *pro se* amended complaint.

    A rule that a plaintiff adopts everything stated in a document by attaching the document to his pleading would be particularly unwise in a *pro se* prisoner action because it would be inconsistent with the Ninth Circuit's repeated and clear command that *pro se* pleadings be liberally construed. Such a use of the rule that a plaintiff generally adopts documents attached to his pleading would result in an extremely confused pleading for a *pro se* plaintiff. Here, for example, the court would have statements that suggested both deliberate indifference (e.g., the allegations that the transfer was done in knowing disregard for Mr. McGary's medical need to remain in a CDCR medical facility) and the absence of deliberate indifference (e.g., the statements by prison officials that the transfer was appropriate). The court would be required to liberally construe the *pro se* pleading, which would be rather difficult with the conflicting information. And such a use of the rule would discourage *pro se* litigants from attaching anything or referring to any documents in their complaints. The attachment of documents to *pro se* prisoner complaints often aids in the understanding of the claim because the documents sometimes can put allegations in context. The court is not eager to impose a technical pleading requirement that would discourage the sometimes helpful practice of attaching inmate appeals and prison paperwork to *pro se* prisoner complaints.

    Even if the court could use the attachments to the amended complaint as the defendants suggest to find that the amended complaint failed to state a claim, the victory would be short-lived for the defendants. The court would have to grant leave to amend, and Mr. McGary could file a second

14-cv-4686 LB
ORDER

8

amended complaint that omitted the exhibits but was otherwise identical to his amended complaint. The second amended complaint then would state a claim. The inconsistency that would then exist between the amended complaint and second amended complaint would not be a basis for dismissing the amended complaint. *See Shirley v. University of Idaho*, No. 14-36108, slip op. at 4 (9th Cir. Sep. 10, 2015) (Kozinski, J., concurring) ("Inconsistency–even direct contradiction–between a current complaint and an earlier one is not a basis for dismissal").

The defendants also argue in their motion to dismiss that they are entitled to qualified immunity because the amended complaint and attachments thereto do not show deliberate indifference. (ECF No. 30 at 6-7.) This argument fails for the same reason that the challenge to the pleading of the deliberate indifference claim fails, i.e., the plaintiff did not adopt as true the statements of prison officials in the attachments to the amended complaint.

The defendants have failed to demonstrate that Mr. McGary's complaint fails to state a claim upon which relief may be granted. This ruling only determines the adequacy of the pleading, and says nothing about the merits of Mr. McGary's claims. If the defendants make a motion for summary judgment, Mr. McGary cannot simply ignore it and expect to go to trial.

## CONCLUSION

The defendants' motion to dismiss is **DENIED**. (ECF No. 30.) In order to move this action toward resolution, the court now sets the following briefing schedule for motions for summary judgment. No later than **November 6, 2015**, the defendants must file and serve a motion for summary judgment or file and serve a notice that they do not intend to file a motion for summary judgment. No later than **December 4, 2015**, Mr. McGary must file and serve his opposition to the motion for summary judgment. No later than **December 18, 2015**, the defendants must file and serve their reply brief, if any.

The defendants are reminded that they must provide a new *Rand* notice regarding summary judgment procedures at the time they file a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If the motion is based on nonexhaustion of administrative remedies, they must comply with the notice and procedural requirements in *Albino v. Baca*, 747 F.3d 1162 (9th

Cir. 2014). Mr. McGary is cautioned to carefully read the notices in the order of service, as well as the notice that the defendants will send him with their motion for summary judgment, regarding the procedures for and effects of summary judgment.

**IT IS SO ORDERED.**

Dated: September 25, 2015

_____
LAUREL BEELER
United States Magistrate Judge